# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE,<br><br>  Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>  Defendant. | Civil Action No. 18-944 (JEB) |

## MEMORANDUM OPINION

  The Israeli-Palestinian conflict casts a long shadow, one that extends even to this Freedom of Information Act suit. Plaintiff here, the American Center for Law and Justice, challenges the State Department's withholding of portions of a report containing information about the work of the United Nations Relief and Works Agency for Palestine Refugees in the Near East (UNRWA). State withheld the information under FOIA Exemption 1, contending that its release would be a threat to national security. In this suit, ACLJ challenges the withholding, and State now moves for summary judgment. Because the Court finds that the invocation of Exemption 1 is sound, it will grant the Motion.

**I. Background**

  ACLJ is a non-profit organization "dedicated to the defense of constitutional liberties secured by law." ECF No. 1 (Compl.), ¶ 5. In line with its mission, Plaintiff regularly makes records requests to federal, state, and local governments and then publishes its findings. Id. This case stems from one such request. In recounting the procedural history, the Court, for the purposes of this Motion, accepts as true ACLJ's factual retelling of all that has transpired.

1

On February 15, 2018, Plaintiff submitted a FOIA request to State's Office of Information Programs and Services (IPS) seeking various documents related to the work of the UNRWA. Id., ¶ 7. The request specifically asked for a State Department report concerning UNRWA aid to Palestinian refugees. Id. When Defendant failed to make a determination within the requisite twenty-day period, Plaintiff filed the instant Complaint. Id., ¶¶ 31–33; see 5 U.S.C. § 552(a)(6)(A)(i).

ACLJ later amended its request, limiting it to the specific UNRWA Report to Congress on Protracted Refugee Situations. See ECF No. 15-4 (Defendant's Statement of Undisputed Material Facts), ¶ 3; see also ECF No. 16-2 (Redacted Report). Congress directed the State Department to write such a report on UNRWA activities. See S. Rep. No. 113-81, at 70 (2013). The Report included information concerning the number of people receiving UNRWA services and the extent to which such services further the security interests of the United States and Middle Eastern allies. See Redacted Report at 1, 3, 4; see also ECF No. 15-1 (Declaration of Eric F. Stein), ¶ 14.

On July 13, 2018, State released most of the five-page Report but withheld certain portions pursuant to FOIA Exemption 1. See Reply at 5; Stein Decl., ¶¶ 16–30. As a classified document, the Report contained a classification rationale and related markings by Anne C. Richard, the Assistant Secretary for the Bureau of Population, Refugees, and Migration (PRM). Richard had original classification authority to review the Report. See Stein Decl., ¶ 16. Further explaining the document's classification, State submitted the Declaration of Eric F. Stein, Director of IPS, who also had original classification authority. Id., ¶ 1. The Declaration explains that the release of the full Report would create a risk to national security. Id., ¶¶ 13–30. On August 20, Defendant filed the current Motion for Summary Judgment. Plaintiff thereafter

requested that the Court review the Report *in camera*, which invitation this Court accepted. See Opp. at 14; Minute Orders of October 4 & 5, 2018. The Court has now reviewed the Report.

**II.     Legal Standard**

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). "A genuine issue of material fact is one that would change the outcome of the litigation." Laverpool v. Dep't of Hous. & Urban Dev., 315 F. Supp. 3d 388, 390 (D.D.C. 2018); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Where conflicting evidence exists as to a material issue, the Court is to construe such evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. See Neil v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In FOIA cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d

857, 862 (D.C. Cir. 2009) (citation omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 509 (D.C. Cir. 2011). This standard applies most saliently in national-security cases. See ACLU v. U.S. Dep't of Def., 628 F.3d 612, 624 (D.C. Cir. 2011).

## III. Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (internal quotation marks and citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. Id. § 552(a)(4)(B). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

On the other hand, "Congress was also aware that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" AquAlliance v. U.S. Bureau of Reclamation, 856 F.3d 101, 102 (D.C. Cir. 2017) (quoting Dep't of Justice v. Julian,

4

486 U.S. 1, 8 (1988)). FOIA, accordingly, "balance[s] the public's need for access to official information with the Government's need for confidentiality." Weinberger v. Catholic Action of Haw., 454 U.S. 139, 144 (1981). In pursuit of this interest in confidentiality, "[n]ine categories of information are exempt from FOIA's broad rules of disclosure." Elec. Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence, 982 F. Supp. 2d 21, 27 (D.D.C. 2013) (citing 5 U.S.C. § 552(b)(1)–(9)). "These exemptions are to be narrowly construed . . . and th[e] Court can compel the release of any records that do not satisfy the requirements of at least one exemption." Id. at 27–28 (citing Reporters Comm. for Freedom of the Press, 489 U.S. at 755).

In the spotlight here is Exemption 1, which covers matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The propriety of an agency's withholding is considered *de novo* by a reviewing court. Id. § 552(a)(4)(B). Given the Executive's "unique insights into what adverse [e]ffects might occur as a result of public disclosure of a particular classified record," Ray v. Turner, 587 F.2d 1187, 1194 (D.C. Cir. 1978) (internal quotation marks omitted), however, courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." Larson, 565 F.3d at 865; see also id. ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security.") (citation omitted). "[I]n the national security context," therefore, "the reviewing court must give 'substantial weight'" to agency declarations. ACLU v. U.S. Dep't of Justice, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (quoting King v. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)); see Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) (stating that, "mindful that courts have little expertise in either international

diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns" regarding harm that disclosure could cause to national security). In according such deference, "a reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation and internal quotation marks omitted). "[T]he text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." Morley v. CIA, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (emphasis added).

ACLJ mounts two types of challenges here, which may be defined as procedural and substantive. As to the former, it argues that, because State has not complied with the technical requirements of Executive Order 13526 — the E.O. governing classification — its invocation of Exemption 1 was improper. As to the latter, it maintains that Defendant has not produced a sufficient substantive basis for its withholdings. The Court looks at each separately.

A. Procedural Requirements

E.O. 13526 enumerates a number of procedural requirements that the Government must satisfy in classifying information. See 75 Fed. Reg. 707 (Dec. 29, 2009). ACLJ argues that State did not follow those requirements in two ways: (1) the original Report contained insufficient markings and assurances that Richard complied with the classification procedures originally; and (2) Richard did not provide an adequate rationale for classification on the Report, a mistake that cannot be cured by Stein's subsequent Declaration. See Opp. at 5–7.

6

1. *Markings and Assurances*

Section 1.6 of the Executive Order requires documents at the time they are classified to contain five sets of markings: (1) that the information was within one of the three classification levels; (2) the identity, by name and position, of the original classification authority; (3) the agency and office of origin; (4) instructions for declassification; and (5) a concise reason for classification that, at a minimum, cites the applicable classification categories. The Report contains each of these markings: (1) it was labeled "Confidential"; (2) Anne C. Richard's name and position were given; (3) PRM, the office of origin, was cited; (4) it set the declassification date to occur on January 14, 2025; and (5) Reason 1.4(d) was provided as an applicable classification category. See Redacted Report.

ACLJ nonetheless argues that Richard failed to "ma[k]e certain" that the Report was properly classified under these requirements. See Opp. at 6 (quoting Canning v. U.S. Dep't of State, 134 F. Supp. 3d 490, 501 (D.D.C. 2015)). This position is a stretch. To begin, the Order says nothing about a classifier's need to "make certain" that procedural requirements were met. As State correctly asserts, moreover, there are no magic words required to meet this standard. See Reply at 7. Rather, in the absence of bad faith, general statements of procedural compliance may suffice. See Judicial Watch v. U.S. Dep't of Defense, 857 F. Supp. 2d 44, 57 (D.D.C. 2012). There is no allegation of evidence of such bad faith here. In addition, Stein, who has "original classification authority and [is] authorized to classify and declassify national security information," repeatedly provides assurances throughout his Declaration that the Report is properly classified. See Stein Decl., ¶¶ 1, 16–18, 21, 23.

Plaintiff next argues that because Richard invoked § 1.4(d) as her classification rationale while Stein cited both § 1.4(b) and § 1.4(d), this somehow renders the entire classification

7

improper. The Court is not persuaded. Section 1.6 of the Order requires that the relevant document contain "a concise reason for classification that, at a minimum, cites the applicable classification categories." E.O. 13526, § 1.6.(a)(5). This reason must be "immediately apparent" at the time of the original classification. Id., § 1.6(a). ACLJ takes this to mean that the only markings relevant to the Court's analysis are those contained in the initial Report, and that Stein's subsequent addition of § 1.4(b) classification renders the Report's initial classification under § 1.4(d) invalid. That makes little sense. The fact that the original Report held one fewer classification rationale has no bearing on whether the information was properly classified originally. Whether Richard made reference to only § 1.4(d) in her initial classification is irrelevant, as "the information is within one of eight protected categories listed in section 1.4 of the Order." Id; see also Competitive Enter. Inst. v. Dep't of Treasury, 319 F. Supp. 3d 410, 418 (D.D.C. 2018) (holding that document need only satisfy one category to meet 1.4's classification requirement).

    2. *Adequate Explanations*

E.O. 13526 gives a number of requirements for classifying government documents. One of these states that the original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." E.O. 13526, § 1.1(a)(4). Plaintiff argues both that Richard failed to identify such relevant threats and that Stein was incapable of curing her omission, as that duty is reserved solely to the classification authority who reviews the Report "in the first instance." Opp. at 7 (quoting E.O. 13526 § 6.1(gg)). In other words, because Richard did not fully explain the threat in classifying the original Report, Stein cannot bolster her effort with a subsequent affidavit.

8

This position holds no water. Plaintiff misinterprets the Order to mean that Richard must have articulated possible threats initially. ACLJ cites no caselaw to support this proposition, and with good reason — it does not exist. State properly asserts that the determining factor is whether a present-day original classification authority (in this case, Stein) is able to certify, based on his own independent review of the information, that it presently meets the standards for classification. See, e.g., Larson, 565 F.3d at 863, 866 (accepting affidavits by CIA and NSA stating that records were "currently properly classified" as sufficient to establish that they were appropriately withheld under Exemption 1); cf Judicial Watch, Inc. v. U.S. Dep't of Def., 715 F.3d 937, 944 (D.C. Cir. 2013) ("[B]ecause the Bennett declaration [of a subsequent classifier] removes any doubt that a person with original classification authority has approved the classification decision, any failure relating to application of the classification guide would not 'reflect adversely on the agency's overall classification decision.'") (quoting Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 484–85 (D.C. Cir. 1980)). That rule makes practical sense as well. For example, where a new threat arose between the time of original classification and subsequent classification, Plaintiff's theory would bar the Government's ability to protect the information. The Court should not endorse such a position.

This does not mean, however, that Richard — who first marked the document classified — has no duties in this respect. Rather, the Order is clear that "[a]t the time of original classification," the classification authority must provide "a concise reason for classification that, at a minimum, cites the applicable classification categories in section 1.4." E.O. 13526, § 1.6(a)(5). This Richard has done. On her initial markings, she wrote, "Classified by: PRM Assistant Secretary Anne C. Richard E.O. 13526, Reason 1.4(d)." No more is needed.

Having determined that all procedural requirements were satisfied, the Court now turns to Plaintiff's arguments as to substance.

B. Substantive Requirements

ACLJ next contends that Defendant has not complied with Exemption 1's substantive requirements because: (1) the material is not properly classified under either § 1.4(b) or § 1.4(d); (2) previous public discussion of the issues means that classification is inappropriate; and (3) the rationale provided is pretext for Defendant to cover its "embarrassment." Opp. at 7–13.

1. *Appropriately Classified*

To show that the material was properly classified under § 1.4(b) and § 1.4(d) — and thus properly withheld — the Government offers Stein's Declaration, which "need only be plausible and logical to justify the invocation of a FOIA exemption in the national security context." ACLU, 628 F.3d at 624 (internal quotation marks omitted). Section 1.4(b) classification applies to foreign-government information, which is defined as information provided to the United States Government by a foreign government "with the expectation that the information, the source of the information, or both, are to be held in confidence." E.O. 13526, § 6.1(s). Section 1.4(d), conversely, covers "foreign relations or foreign activities of the United States, including confidential sources." Plaintiff alleges that: (1) Stein's Declaration is insufficient because he did not demonstrate the requisite personal knowledge of the basis for classification; and (2) even if he did, Stein did not adequately describe his rationale for why the documents should be classified.

a. Personal Knowledge to Classify

Even though ACLJ does not challenge Stein's classification authority, it contends that he did not establish his personal knowledge when he based his classification on "information [that

10

had] been furnished" to him. See Opp. at 10; Stein Decl., ¶ 1. Declarations in the FOIA context are held to be sufficient where the declarant "attests to the personal knowledge of the procedures used in handling a FOIA request and his familiarity with the documents in question." Hall v. CIA, 881 F. Supp. 2d 38, 64 (D.D.C. 2012) (alterations adopted) (citation omitted); see also Niskanen Ctr., Inc. v. U.S. Dep't of Energy, 328 F. Supp. 3d 1, 10 (D.D.C. 2018) (holding that Rule 56's requirements are satisfied in FOIA case where declarant's "conclusions rest on information provided to him by other agency employees and his own review of the records"). Stein explicitly states that the statements are "based upon [his] personal knowledge, which in turn is based upon information furnished to [Stein] in the course of [his] official duties." Stein Decl., ¶ 1. In applying Exemption 1, at least one court in this district has found an almost identical statement sufficient to satisfy the personal-knowledge requirement. See Hall, 881 F. Supp. 2d at 64. This Court reaches the same conclusion.

Unsatisfied with this standard, Plaintiff then attempts to tack on requirements that Stein specify the precise means by which he learned of this information, such as whether it came through a "review of documents, testimony, or written statements." Opp. at 10. ACLJ cites no basis for such intensive inquiry, and this Court does not impose one today. Cf. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search.").

    b.  Rationales

ACLJ also takes issue with each of Stein's classification rationales. Recall that under § 1.6(a)(5) of the Order, an original classification authority must provide a "concise reason for

classification that, at a minimum, cites the applicable classification categories in section 1.4 of [the Order]." Two rationales are offered in the Declaration: § 1.4(b) and § 1.4(d). ACLJ suggests that Stein, somehow knowing Richard's § 1.4(d) classification to be insufficient standing alone, attempted to pull the wool over its eyes by later asserting § 1.4(b) without requisite explanation. See Opp. at 10.

Yet Stein gave a plethora of reasons as to why both § 1.4(b) and (d) were accurate rationales to support classification. With respect to § 1.4(b), he stated that: (a) "A portion of the classified information is 'foreign government information' provided to the Department by a foreign government or international organization with the expectation that it would be kept confidential," id., ¶ 16; (b) "A representative of the source of this foreign government information recently reaffirmed to a State Department official that it continues to have the same expectation of confidentiality with respect to the information provided to the State Department, which was utilized in the report," id.; and (c) "Additional classified information in the report was derived from other State Department sources discussing the region, which were themselves classified at the [c]onfidential level." Id.

Plaintiff asserts that these are conclusory, again requesting information as to the source and method of communication with this representative, as well as raising other specific questions as to the nature of Stein's knowledge of these discussions with foreign officials. See Opp. at 8, 10. State has no obligation to answer Plaintiff's multitude of questions — in fact, E.O. 13526 does not "require that a classifying authority indicate the person who classified the information in question or when [that] information [was] originally classified." Canning, 134 F. Supp. 3d at 502 (internal quotation marks and citations omitted). On the contrary, "the text of Exemption 1

12

itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." Morley, 508 F.3d at 1124. Stein has done just that.

His Declaration also explains specific harms that would likely occur as a result of the information's release. He notes that the "ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy," and that the "[r]elease of foreign government information provided in confidence . . . would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges." Stein Decl., ¶ 26. He then describes the potentially damaging impact release would have on a "number of our bilateral relationships with countries whose cooperation is important to U.S. national security." Id.; see also id., ¶¶ 27–29 (describing further potential harm to foreign relations from disclosure). It is against precisely such harm to the Government's "foreign relations" that § 1.4(d) seeks to protect. These statements are thus sufficient because they demonstrate that "the withheld information logically falls within the claimed exemption[s]" — namely, the ones identified in both § 1.4(b) and § 1.4(d). See Larson, 565 F.3d at 865. The only conclusory assertions the Court sees are those of Plaintiff.

ACLJ last argues that the "proper justification for withholding the information under Section 1.4(d) relies upon a proper showing under Section 1.4(b)." Opp. at 11. Put simply, Plaintiff seems to believe that a § 1.4(d) classification cannot stand on its own. See Opp. at 10–11. This contention founders on two shoals. First, the Court has just determined that State has made a sufficient showing under § 1.4(b). Second, Stein has also satisfactorily explained why the § 1.4(d) classification was appropriate, an explanation this Court accepts. See Stein Decl., ¶¶ 17–18; 27–29; see also Larson, 565 F.3d at 865 (instructing "defere[nce] to executive affidavits predicting harm to the national security") (citation omitted).

With both § 1.4(b) and (d) properly invoked, ACLJ's argument falls apart. The Executive Order requires only that "the information is within <u>one</u> or more of the [protected] categories . . . listed in section 1.4" of the Order. See E.O. 13526, § 1.1(a) (emphasis added). The Court sees no reason why the existence of a second legitimate basis for withholding in addition to the one rightly claimed by Richard should invalidate the document's protection from disclosure.

### 2. *"Public" Disclosure and Congressional Requests to Declassify*

As with many frustrated folk, Plaintiff then takes to the Internet. ACLJ posits that the discussion there of topics similar to those classified here and a letter by members of Congress requesting declassification of the Report undermine the Government's contention that disclosure could actually pose a threat to national security. See Opp. at 12. In other words, any classification would be inappropriate.

The Court is not convinced. ACLJ bases its first claim on the fact that some topics similar to information referred to in three of the classified paragraphs are "routinely provided and/or discussed on UNRWA's website." Opp. at 11. Plaintiff asserts that, because of the "broad public discussion" of these topics, it is "inconceivable" that the information withheld would pose a legitimate threat to national security if released. Id. at 12.

As an initial matter, the Court notes that ACLJ's conclusion does not necessarily follow from its premise. For instance, it is entirely possible that the government did not rely on "information provided . . . by a foreign government," E.O. 13526, §§ 1.4(b), 6.1(s)(1), in compiling information within a certain topic at one time, but did at a later time. But more significantly, Plaintiff's assertions run headlong into State's assessment of the impact of disclosure. Stein has provided a long list of potential harms to foreign relations or activities of

14

the United States in the event of release, including "damage to [] a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States" and the possibility that the withheld information would "impair the U.S.['s] ability to continue [as] an intermediary" in related negotiations. Id., ¶ 27. He further states that the "ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy." Id., ¶ 26. "Courts in this circuit have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review of such claims." Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State, 134 F. Supp. 3d 263, 274 (D.D.C. 2015) (internal quotation marks and citation omitted). This case is no exception. The Court will take Stein — not the Internet — at his word.

Nor is there any basis to a possible claim that State has waived its classification authority through an official acknowledgment. It is true that, where "the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim." ACLU v. U.S. Dep't of Defense, 628 F.3d at 620 (citing Wolf, 473 F.3d at 378). Yet, the Stein Declaration explicitly states that "the Department has not previously authorized or officially acknowledged public release of" the specific information withheld. See Stein Decl., ¶ 21 (emphasis added). ACLJ points to no evidence to the contrary. Although courts typically assess official acknowledgments through a multi-factor test, see ACLU, 628 F.3d at 620–21, given the express and plausible assertions by State on this question, the Court sees no reason to go that far. See Stein Decl., ¶ 21. If

15

Exemption 1 were considered waived every time a controversial issue was discussed on the Internet, then even the most sensitive information would be subject to disclosure.

Plaintiff then points to a letter written by certain members of Congress to President Trump that requested that the information be declassified. See Opp. at 12; Letter to Donald J. Trump, President of the United States, from Members of the United States House of Representatives (Apr. 18, 2018). It is a dangerous proposition indeed that executive-branch determinations should be overruled by a simple missive from a few members of the legislature. Such a theory would overturn years of deference to executive affidavits in matters of national security and potentially implicate separation of powers. See, e.g., Larson, 565 F.3d at 865; cf. Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990) (holding that district court erred by "perform[ing] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure"). It is the Executive, not Congress and not the Court, who has the expertise to make such determinations.

3. *Embarrassment*

Plaintiff takes a final swing, positing that State is merely trying to save face by classifying this hot-button information. See Opp. at 13. It is true that E.O. 13526 § 1.7(a) provides that classification shall not be used to "prevent embarrassment to a person, organization, or agency." ACLJ's argument, however, is mere unsupported speculation, and the Court will not entertain it. See, e.g., Competitive Enter. Inst., 319 F. Supp. 3d at 418 (rejecting conclusory assertion that agency classified document to avoid embarrassment); Billington v. Dep't of Justice, 11 F. Supp. 2d 45, 58 (D.D.C. 1998), aff'd in part, vacated in part, 233 F.3d 581 (D.C. Cir. 2000) (rejecting "speculative evidence" that document was redacted to prevent embarrassment where FBI had stated that it withheld information because it was provided based

on promise of confidentiality). Even if certain portions could be considered embarrassing to State, "it would nonetheless be covered by Exemption 1 if, independent of any desire to avoid embarrassment, the information withheld [was] properly classified." Wilson v. Dep't of Justice, No. 87-2415, 1991 WL 111457, at *2 (D.D.C. June 13, 1991) (citing Lesar, 636 F.2d at 483). In light of the Court's finding that State properly classified the information, it finds no reason why potential embarrassment should outweigh protection of national security.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate Order so stating will issue with this Opinion.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: December 4, 2018